IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No.

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DECLARATION OF** |
| v. ) | **TASK FORCE OFFICER** |
| ) | **ROMUALD A. LANKOSZ** |
| $25,000 IN U.S. CURRENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

I, Romuald A Lankosz, pursuant to 28 U.S.C. § 1746 and the laws of the United States, declare under penalty of perjury that the following information is true and correct to the best of my knowledge and belief:

1. I, Romuald Lankosz, am a Task Force Officer ("TFO") of the U.S. Drug Enforcement Administration ("DEA") and am an "Investigative or Law Enforcement Officer of the United States within the meaning of Title 18 United States Code ("U.S.C.") § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 U.S.C. § 2516. I am a sworn Law Enforcement Officer employed by the Nash County ("N.C.") Sheriff's Office with 22 years of experience in law enforcement including, but not limited to, drug crime investigations.

2. I have been duly deputized by the DEA, and currently hold the position of TFO assigned to the DEA Raleigh, North Carolina District office. The DEA Task Force is comprised of DEA intelligence analysts, task force officers, agents, investigators and detectives from several jurisdictions throughout North Carolina including the North Carolina State Bureau of Investigation, the Orange County Sheriff's Office, the Wake County Sheriff's Office, the Durham



County Sheriff's Office, the Raleigh Police Department, the Henderson Police Department and the Nash County Sheriff's Office. The underlying purpose and focus of the DEA Task Force is to actively investigate a wide variety of crimes that relate to and include drug trafficking. I personally have been involved in numerous of drug trafficking investigations that focus on various types of narcotics, means of transportation, drug traffickers, sources of supply, etc., throughout the Eastern District of North Carolina and beyond.

3. Prior to my employment as a DEA TFO I was assigned to the Nash County Sheriff's Office Investigative Division as a Lieutenant. As a Lieutenant I was responsible for supervising eleven (11) Investigators and their assigned cases to include but not limited to Homicides, Rapes, Robberies, Assaults and various Property crimes. Prior to that I was assigned as a Patrol Sergeant responsible for six (6) deputies to include one (1) K-9. As a Patrol Sergeant my responsibilities were to oversee daily calls for service, which included but not limited to calls for service to Homicides, Robberies, Rapes, Assaults, Larcenies and Property crimes. Prior to that I was assigned as a Patrol Corporal. As a Patrol Corporal my responsibilities were to assist the Patrol Sergeant and handle calls for service. I have participated in death investigations, physical assaults, property crimes, and other major felony crimes. I completed Basic Law Enforcement Training at Wilson Community College where I received my BLET certification in 1994.

4. Since my employment as a Law Enforcement Officer, I have completed DEA Basic Narcotics School, DEA Task Force Officer Training, Interdiction for Patrol Officers, Reids Interview/Interrogation, Basic Interview/Interrogation and other in-service classes.

5. I have initiated and assisted with numerous state and federal narcotics investigations, which have resulted in the seizures of large quantities of controlled substances, United States currency, drug paraphernalia, motor vehicles, firearms and ammunition. In

connection with my official DEA and prior law enforcement duties, I have participated in long-term, historical conspiracy investigations, wiretap investigations, and Organized Crime Drug Enforcement Task Force (OCDETF) investigations. I have directed and/or participated in investigations of criminal violations of North Carolina narcotics laws and federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952, 960, 963 and Title 18, United States Code, Sections 924, 1956, 1957, and 371; as well as the aiding and abetting the above offenses, in violation of Title 18, United States Code, Section 2.

6. I have testified in state and federal judicial proceedings and prosecutions for violations of controlled substance and firearm laws. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds derived from drug trafficking. I have participated in numerous narcotics investigations, during the course of which I have: recovered controlled dangerous substances; conducted physical surveillance; written and executed numerous search warrants; reviewed recorded conversations of and the criminal histories of narcotics traffickers; and I have participated in investigations involving the monitoring and recording of court authorized Title III interceptions that resulted in large seizures of narcotics and United States currency.

7. Through training and participation in investigations of narcotics trafficking I have learned the methods used by narcotics traffickers to buy and sell narcotics and to conceal their assets, income, and activities from the Government and law enforcement authorities.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. This declaration is made in support of the forfeiture of $25,000 in U.S. Currency (the "Subject Currency") seized from Tyran Knight and Shontayene Pittman on April 12, 2022, pursuant to Title 21 U.S.C. § 881.

10. The Subject Currency was initially brought into Government custody on April 12, 2022. Declarant seized the currency subsequent to a routine traffic stop in the vicinity of Driver Road at Eagle Ridge Drive in the town of town of Middlesex, North Carolina.

## APRIL 12, 2022: TRAFFIC STOP

11. On April 12, 2022 Nash County Sheriff's Office Deputies ("NCSO") observed a 2013 Pewter Chevrolet 3500 Truck ("pewter Chevy truck") going in excess of the posted speed limit (52 miles per hour in a 45 mile per hour zone) with a license plate light that appeared to be out.

12. On April 12, 2022, based on the traffic violation, at approximately 1:36 AM, NCSO conducted a vehicle stop on the pewter Chevy truck.

13. NCSOs contacted the driver and passenger, Tyran Knight ("Knight") and his uncle Shontayene Pittman ("Pittman"), respectively.

14. NCSO NAME Sergeant Costa ("Sergeant Costa") contacted the diver of the pewter Chevy truck – Knight – and after asking routine questions informed Knight that he would receive a warning for the traffic violation. Sergeant Costa requested that Knight join him in his police vehicle and Knight complied.

15. Based on Sergeant Costa's prior knowledge of Knights narcotic trafficking activities, at 1:46 AM, Deputy Robinzon Loor ("Deputy Loor") and K-9 Freya arrived on scene

and conducted a free air sniff of the exterior of the pewter Chevy truck. K-9 Freya gave a positive indication to the presence of narcotics on the driver side door of the vehicle, a result of which, Sergerant Costa asked Knight whether there were any narcotics inside the truck to which Knight replied in the negative. Per routine, Sergeant Costa then asked Knight whether there was a large amount of currency inside the truck to which Knight replied: "Nah, well I mean, I don't know exactly how much." At this point, Knight consulted with Pittman and it was determined that perhaps there may be up to $25,000 in USC inside the vehicle. Based on a representation that a large amount of USC was in the pewter Chevy truck, Sergeant Costa called Declarant Task Force Officer Romuald A. Lankosz ("Declarant") to the scene.

16. At approximately 2:20 AM, Declarant arrived to the scene and was directed to the vehicle in which Declarant contacted a grey plastic bag concealed under the driver side rear passenger seat.

17. Upon review, it was determined that inside the grey plastic bag there was $25,000 in USC including in bundles tied together by rubber band in paper denominations of: three-hundred and fifty twenty ($20) dollar bills and one-hundred and eighty one-hundred ($100) dollar bills.

**SUBSEQUENT PROCESS**

18. As a result of locating $25,000 in USC in a grey plastic bag in rubber banded bundles concealed under a seat in a vehicle traveling in the middle of the night through to the next morning, given the totality of the circumstances with the positive narcotics hit from K-9 Freya, Declarant placed the USC in an evidence bag and secured it in the trunk of his police vehicle and proceeded to conduct a roadside interview of Pittman.

19. Declarant's interview resulted in the story that Pittman and Knight left Middlesex, NC at 12:15 AM on April 11, 2022 and drove straight to Carthage Mississippi to purchase a

twenty-two (22) foot food trailer from a gentleman named Terry Mann ("Mann"). Pittman provided a telephone number for Mann.

20. In order to further investigate, Declarant requested that Pittman and Knight accompany him to HCSO for an additional interview and witness a K-9 three-box lineup of the USC to be sure the narcotics hit from K-9 Freya was on the USC. Pittman agreed and noted that he needed to go by his residence first but would meet them at the station.

21. At approximately 3:13 AM, Deputy Loor and K-9 Freya – witnessed by Sergeant Costa, Deputy Devin Denton ("Denton"), Declarant and Pittman - conducted a control three-box lineup in which none of the control boxes contained narcotics.

22. At approximately 3:47 AM, the same witnesses watched as K-9 Freya performed a three-box lineup which included one box with the USC. K-9 Freya gave a positive alert on the box containing the USC.

23. After the positive alert, Declarant explained to Pittman that the USC would be formally seized by the DEA and walked Pittman through the process he could expect and his rights regarding the USC as a potential claimant.

**SUBSEQUENT SEIZURE INVESTIGATION**

24. In the course of subsequent investigation, Declarant ran the criminal history for both parties and returned the following information:

Shontayene Pittman

| | |
|---|---|
| August 1997 | Conspiracy to Distribute; and Possession with Intent to Distribute Cocaine Base (Conviction) |
| April 2022 | Possession of A Firearm by Convicted Felon; and Maintain a Dwelling and Trafficking Cocaine (Charged, Pending) |

Tyran Knight

|  |  |
|---|---|
| July 2014 | Robbery (Conviction) |
| March 2022 | Trafficking Cocaine by Possession and Transportation; and Maintaining a Dwelling (Charged, Pending) |

## **CONCLUSION**

25. Based on the foregoing, probably cause exists to believe that the $25,000 in USC was used or intended for use in exchange for controlled substances, represented proceeds of trafficking in controlled substances or was used or intended for use to facilitate violation of the Controlled Substances Act, 21 U.S.C. § 881.

Executed this 19th day of January, 2023.

Romuald A. Lankosz

Task Force Officer

Drug Enforcement Administration